IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JO ANN YOCHUM, ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Civil Action No. 2:11-0378 |
| ) | |
| FJW INVESTMENT, INC., *et al.*, ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

**OPINION**

**Cercone, District Judge**

**I.     Introduction**

This matter is before the court upon a Motion for Summary Judgment filed by Defendants FJW Investment, Inc. ("FJW"), Frank J. Witkowski, Samuel J. Lucci and Maribeth A. Lucci (ECF No. 134), as well as a separate Motion for Summary Judgment filed by Samuel and Maribeth Lucci and Defendant Partners Through People, Inc (ECF No. 138). For the reasons that follow, FJW's Motion will be denied and Partners Through People's Motion will be granted.

**II.     Factual Background**

In this action for religious discrimination, Plaintiff Jo Ann Yochum ("Yochum") contends that she was constructively discharged by her employer, FJW, when she refused to participate in weekly "training sessions" that consisted primarily of religious indoctrination and proselytizing. Defendant's Concise Statement of Material Facts ("Def. SMF") (ECF No. 136) ¶

1. FJW is the parent company to Bath Fitter of Pittsburgh, an entity engaged in selling and installing acrylic overlay for tubs and showers. Id. ¶ 2.

At all pertinent times, FJW contracted with an entity known as Partners Through People ("PTP") to provide FJW with sales representatives for the Bath Fitter business. Id. ¶ 4. Pursuant to the arrangement, PTP solicited candidates for sales positions and performed interviews and training to individuals selected for potential hire by Bath Fitter. Id. Potential sales representatives agree to pay the cost of the PTP training - $90,000 – by accepting a reduced commission amount from their sales at Bath Fitter. Id. ¶ 5.

Yochum's employment and training commenced in April, 2004. Id. ¶¶ 14-15. According to Yochum, the training consisted largely of "religious dogma" and religious indoctrination. Id. ¶¶ 8-9; Amended Complaint ("Am. Compl.") (ECF No. 44) ¶¶ 18-20. Once her initial training was over, Yochum alleges that she was required to attend additional training in the form of mandatory weekly meetings and "break out" sessions with Sam Lucci, the co-owner of both FJW and PTP. Am. Compl. ¶¶ 21-22; Def. SMF ¶ 3. Yochum contends that these sessions were used for the purpose of one-on-one religious indoctrination and brain washing. Def. SMF ¶ 9.

Yochum was very successful as a sales person for Bath Fitter. Yochum Dep. (ECF No. 137-1) at 92. However, she objected to the religious aspects of the training sessions and felt that she should not have to participate in what she viewed as religious indoctrination. Def. SMF ¶ 32. She contends that, when she raised these concerns with Lucci, he accused her of negativity and instructed her to participate in additional training sessions. Plaintiff's Reponse to Def. SMF ("Pl. Resp.") (ECF No. 149) ¶¶ 8-10. Yochum viewed this as an ultimatum and believed that she would be terminated if she refused to participate in the additional training (and embrace the religious elements that accompanied it). Id. Yochum responded by seeking other employment,

2

eventually securing a sales position with another company. Def. SMF ¶¶ 45-47. Her last day of employment with Bath Fitters was October 3, 2008. Id. ¶ 1. Yochum characterizes her departure from Bath Fitter as a constructive discharge based on her refusal to participate in mandatory religious training.

### III. Procedural Background

Yochum initiated this action on March 23, 2011. ECF No. 1. She filed an Amended Complaint on October 17, 2011, asserting violations of Title VII (Count I), the Pennsylvania Human Relations Act (Count II), and claims of aiding and abetting (Count III) and civil conspiracy (Count IV). In response to Defendants' motions for summary judgment, Yochum stipulated to the entry of summary judgment with respect to the claims raised in Counts II through IV. See ECF No. 148 at 1 n. 1. This stipulation disposes of each of the claims against Defendants Witkowski, Samuel Lucci, Maribeth Lucci, and Partners Through People. As a result, the only claim remaining in this action is Yochum's Title VII claim against FJW.

### IV. Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a

genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. Celotex Corp., 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. Id. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

**V.     Discussion**

FJW raises the following three independent arguments in support of its Motion for Summary Judgment on Yochum's Title VII claim: (1) Yochum was an independent contractor, rather than an employee, and is not entitled to the protections of Title VII; (2) Yochum cannot establish a *prima facie* case of discrimination because her decision to leave Bath Fitter was not the result of a bona fide religious conflict with an employment requirement; and (3) Yochum voluntarily terminated her employment, rather than being constructively discharged. Each of these arguments will be addressed in turn.

  **A. Employee/Independent Contractor**

FJW first contends that Yochum was an independent contractor, rather than an employee. It is axiomatic that only employees are entitled to protection under Title VII. Brown v. J. Kaz,

4

Inc., 581 F.3d 175, 179 (3d Cir. 2009). In determining whether an individual is an employee or an independent contractor, the United States Supreme Court has directed courts to consider the following non-exhaustive list of factors:

> Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323-24 (1992); see also Brown, 581 F.3d at 180 (applying the Darden factors in the Title VII context). Courts must analyze and weight all of the Darden factors with no one factor being determinative. Darden, 503 U.S. at 324 (quoting NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258 (1968)). However, strong emphasis is placed on "the hiring party's right to control the manner and means by which the work is accomplished." Bernhard v. TRC Global Solutions, Inc., 2010 WL 4024606, at *5 (W.D. Pa. Oct. 13, 2010) (citing Walker v. Corr. Med. Sys., 886 F.Supp.515, 520 (W.D. Pa. 1995)).

Several of the factors elucidated in Darden tilt towards classification as an independent contractor. For example, FJW asserts that Bath Fitter characterized Yochum as an independent contractor at all times; did not withhold taxes from her paychecks; gave her leads, but encouraged her to develop her own leads, and permitted her to reject or accept those leads as she saw fit; did not provide her with office space or a desk at the company's headquarters; did not require her to complete a time card or timesheet of any sort; and required her to pay for her own training courses, including those provided through PTP. Def. SMF. ¶¶ 16, 18, 20-24, 29-30.

5

Yochum used many of her own tools to perform her work, including a fax machine, cell phone, appointment book, computer, vehicle, and camera. Yochum Dep. at 111, 118. Yochum was issued a 1099 form for tax purposes. Def. SMF. ¶ 24. When Yochum attended a certification course in Ohio in 2008, she paid for the course herself and was not compensated by Bath Fitter for her attendance. Yochum Dep. at 32-33. FJW contends that each of these factors supports Yochum's status as an independent contractor.

On the other hand, Yochum has identified evidence in the record suggesting that FJW exercised strict and extensive control over her schedule and work during her time at Bath Fitter. According to Yochum, FJW provided specific, mandatory scripts to be used during sales presentations; sent her assigned appointments and customer prospects, none of which could be rejected without repercussion; limited her discretion with respect to her work schedule, including when and how long to work; required Yochum (and other sales representatives) to staff Bath Fitter's showroom on a regular basis; required attendance at mandatory weekly meetings; provided proprietary tools, including a measuring device, presentation materials, and other forms and documents; required representatives to report sales figures on a daily, weekly, monthly, and quarterly basis; and prohibited sales representatives from earning income from any other principal during their tenure with Bath Fitters. Plaintiff's Concise Statement of Additional Material Facts ("Pl. SMF") (ECF No. 150) ¶¶ 1-6, 8-14. Moreover, she notes that the United States Internal Revenue Service investigated her employment status and determined that she was an employee, rather than an independent contractor. Pl. Resp. ¶¶ 6, 13.

Examining these facts in the light most favorable to Yochum, there are clearly genuine issues of disputed material fact regarding her status as an independent contractor or employee. Both parties vigorously dispute many of the factual assertions detailed above, and those which

6

are undisputed are largely in equipoise. In light of these disputed material facts, summary judgment in favor of FJW on this issue must be denied.

### B. *Prima Facie* Religious Discrimination

Title VII provides that it is an unlawful employment practice for an employer to discriminate against an individual with respect to conditions of employment because of her religion. 42 U.S.C. § 2000e-2(a). For purposes of the statute, "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief," unless an employer demonstrates that he is unable to reasonably accommodate the employees religious practices without undue hardship. 42 U.S.C. § 2000e(j). In order to make out a claim for religious discrimination, Yochum must establish that: (1) she held a bona fide or sincere religious belief that conflicted with an employment requirement; (2) she informed the employer of this belief; and (3) she was disciplined (or terminated) for failing to comply with the conflicting employment requirement. Shelton v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 224 (3d Cir. 2000).

FJW contends that Yochum cannot satisfy the first element of her *prima facie* case because her disagreement with FJW did not stem from her own religious beliefs, but rather from her general objection to references to God and religion in the workplace. FJW suggests that an individual who does not adhere to a defined religion or set of religious beliefs cannot make out a claim for religious discrimination because such amorphous beliefs cannot conflict with an employment requirement.[1] A review of the pertinent caselaw proves otherwise. As noted by the Supreme Court, bona fide religious beliefs include moral or ethical beliefs as to what is right and wrong, so long as they are sincerely held and comport with the individual's "own scheme of

---

[1] Yochum testified that she is not a member of a religious group and does not practice any religion, although she occasionally attends Catholic religious services on holidays. Def. SMF. ¶ 31.

7

things." United States v. Seeger, 380 U.S. 163 (1965). Whether a particular belief is central to a religion or is a true religious tenet is "not open to question." Id. at 185. Thus, "the sincerity of a plaintiff's engagement in a particular religious practice is rarely challenged," and "claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions." Tagore v. United States, 735 F.3d 324, 328 (5th Cir. 2013); see also Adeyeye v. Heartland Sweeteners, LLC, 721 F.3d 444, 452 (7th Cir. 2013) (noting that "the prospect that courts would begin to inquire into the personal reasons an individual has for holding a religious belief would create a slippery slope we have no desire to descend").

Moreover, courts have steadfastly declined to grant summary judgment under circumstances similar to those at bar. In Young v. Southwestern Savings and Loan Ass'n, 509 F.2d 140 (5th Cir. 1975), the plaintiff objected to being forced to attend mandatory monthly meetings that included a religious discussion and prayer. Id. at 141. When she voiced her concerns to management, she was instructed that the meetings were mandatory and that she had an obligation to attend the entire meeting, but that she could "close her ears" for the religious portions. Id. at 142. Rather than attend the prayer meetings, the plaintiff opted to give up her employment. The Fifth Circuit held that this amounted to a constructive discharge under circumstances that violated Title VII:

> The only possible reason for her resignation on September 15, 1971, was her resolution not to attend religious services which were repugnant to her conscience, coupled with the certain knowledge from Bostain, her supervisor, that attendance at the staff meetings-in their entirety-was mandatory and the reasonable inference that if she would not perform this condition of her employment, she would be discharged. In these circumstances, when she could hope no longer that her absence at the meetings would not be noticed, she could reasonably infer that in one week, one month or two months, she would be discharged because of the conflict between her religious beliefs and company policy. Surely it would be too nice a distinction to say that Mrs. Young should have borne the considerable emotional discomfort of waiting to be fired instead of

8

immediately terminating her association with Southwestern. This is precisely the situation in which the doctrine of constructive discharge applies, a case in which an employee involuntarily resigns in order to escape intolerable and illegal employment requirements.

Id. at 144. Other courts have consistently reached the same conclusion. See, e.g., E.E.O.C. v. Townley Engineering & Mfg. Co., 859 F.2d 610, 612-14 (9th Cir. 1988) (denying summary judgment where plaintiff was constructively discharged after being forced by his employer to attend mandatory weekly devotional services); Mathis v. Christian Heating and Air Conditioning, Inc., 2016 WL 304766, at *13 (E.D. Pa. Jan. 26, 2016) (employee's religious-based objection to wearing a name tag displaying a religious message was sufficient to survive summary judgment on a Title VII claim); Shepherd v. Gannondale, 2014 WL 7338714, at *8 (W.D. Pa. Dec. 22, 2014) (denying summary judgment where employee was forced to attend monthly "community meetings" containing obligations that violated her beliefs as a Jehovah's Witness).

In the instant case, Yochum has adduced evidence in the record suggesting that she was required by Lucci to attend training and "breakout" sessions that contained religious proselytizing and indoctrination concerning a set of religious beliefs that she did not adhere to, despite her objections to the religious content. Should she factually prove these allegations at trial, a jury could reasonably find, based on the cases cited above, that her bona fide religious beliefs conflicted with an explicit employment requirement. Under such circumstances, summary judgment is inappropriate.[2]

---

[2] FJW also argues that, to the extent that Yochum does subscribe to a bona fide religious belief that actually conflicted with a workplace requirement, FJW reasonably accommodated that belief. FJW relies entirely on Yochum's statement at deposition that "[Sam Lucci] was always looking for ways to accommodate me with the religious aspect." Yochum Dep. at 81. Whatever accommodations may have otherwise been made, there remains a disputed issue of material fact

9

### C. Constructive Discharge

FJW's final contention is that Yochum cannot establish a discrimination claim based on her termination because she "voluntarily left FJW/Bath Fitter on her own terms and on her own time-table after accepting an offer of employment" with another company. Defendant's Brief in Support of Motion for Summary Judgment (ECF No. 135) at 13. Yochum counters that she was constructively discharged because her resignation was the result of being forced to choose between submitting to additional religion-permeated training or being fired.

To establish a constructive discharge, a plaintiff must show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Goss v. Exxon Office Systems Co., 747 F.2d 885, 888 (3d Cir. 1984); see also Gannondale, 2014 WL 7338714, at *15 ("An employee can establish a claim for constructive discharge when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns."). In the constructive discharge context, "[t]he resignation is treated as if it were an outright dismissal by the employer, which can serve as the basis for a discrimination claim." Hibbard v. Penn–Trafford Sch. Dist., 2014 WL 640253, at *7 (W.D. Pa. Feb. 19, 2014) (citing Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167–68 (3d Cir. 2001)).

Yochum has adduced evidence suggesting that she was given a choice by Lucci to either submit to additional training, despite the prevalent religious themes that made her uncomfortable, or lose her sales position. Pl. Resp. ¶¶ 4, 6, 9-10. Courts have routinely held that such a choice represents a constructive discharge. In Mathis, for example, the plaintiff, an avowed atheist, objected to wearing a nametag badge that bore a religious message. Mathis, 2016 WL 304766,

---

as to whether Lucci and FJW attempted to accommodate Yochum's request not to participate in the religiously themed training and breakout sessions.

at *2. When the owner of the company observed Mathis covering the message with tape, he informed Mathis that he was "done" at the company if he refused to remove the tape. Id. at *3. The Court held that this amounted to a constructive discharge:

> Peppelman testified that the only choice Mathis had was to wear the badge without the tape if he wanted to continue to work. Plaintiff's objection to wearing the badge without tape was based on his religious beliefs as an atheist. A reasonable jury could conclude that plaintiff communicated his religious-based objection to displaying the mission statement, and that Peppelman gave him a Hobson's choice between continuing to work under conditions that offended plaintiff's beliefs or ending his employment. That evidence, if accepted by a jury, constitutes a constructive discharge.

Id. at *14 (citations omitted).

Similarly, in Gannondale, the plaintiff, a Jehovah's Witness, objected to being forced to attend "community meetings" that violated her religious beliefs. Gannondale, 2014 WL 7338714, at *15. The plaintiff was informed that, "if she could not participate in community meetings, she was not part of Gannondale." Id. The Court held that the record amply supported a conclusion that the plaintiff had been "subjected to an adverse employment action in the form of a termination or a constructive discharge." Id.

In the instant case, as in Mathis and Gannondale, Yochum alleges that she was given a choice between participating in an activity that violated her religious beliefs or losing her job. A jury could reasonably conclude that Yochum's subsequent resignation and departure for another company was the result of a constructive discharge. Mathis, 2016 WL 304766, at *14; see also Young, 509 F.2d at 140 (finding attendance at mandatory prayer meetings to be "intolerable" for an employee where it would require her to sacrifice her fundamental religious beliefs). Summary judgment on this basis must be denied.

## VI. Conclusion

For the reasons set forth above, FJW's Motion for Summary Judgment will be granted as to Counts II through IV and denied as to Count I of the Amended Complaint; and Samuel and Maribeth Lucci and PTP's Motion for Summary Judgment will be granted. Counts II through IV of the Amended Complaint have been dismissed and judgment in favor of Defendants Witkowski, Samuel and Maribeth Lucci, and PTP and against plaintiff will be entered. An appropriate order follows.

Dated: March 31, 2016

s/David Stewart Cercone
David Stewart Cercone
United States District Judge
